UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MITSUI & CO., LTD. and MITSUI OIL
(ASIA) HONG KONG LTD.

                Plaintiffs,

   - against -

PROJECTOR S.A.

**JUDGE BUCHWALD**

-------------------------------------------------------X



08 CV _____
ECF CASE

RECEIVED
AUG 21 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## <u>VERIFIED COMPLAINT</u>

Plaintiffs, MITSUI & CO., LTD. and MITSUI OIL (ASIA) HONG KONG LTD. ("Plaintiffs"), by and through its attorneys, Tisdale Law Offices LLC, as and for its Verified Complaint against the Defendant, PROJECTOR S.A. ("Defendant"), allege upon information and belief as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.    At all material times herein, Plaintiff Mitsui & Co., Ltd. ("Mitsui") was a foreign company duly organized and operating under foreign law with an office and place of business in Tokyo, Japan and Plaintiff Mitsui Oil (Asia) Hong Kong Ltd. ("Mitsui Oil") was a foreign company duly organized and operating under foreign law with registered office in Hong Kong.

3.    Upon information and belief, at all material times, Defendant, Projector S.A. ("Projector") was a foreign corporation or other business entity organized and existing under foreign law with an office and place of business in Belize.

4.      Plaintiffs entered into a charter party with Mitsui OSK Lines ("Mitsui OSK") for the charter of the vessel MORNING EXPRESS (the "Vessel") pursuant to a charter party dated October 11, 2006.

5.      Plaintiffs thereafter subchartered the Vessel to Projector pursuant to an ASBATANKVOY form charter party dated March 31, 2008 calling for the carriage of naptha, from Sikka-Jamnagar range to South Korea-Japan range.

6.      Pursuant to the charter party, the parties thereto had agreed that, if requested by Projector, Plaintiffs would deliver the cargo pursuant to Projector's instructions without surrender of the original bills of lading. In such event, Projector would provide a Letter of Indemnity ("LOI") wherein Projector would agree to later produce the bills of lading and would defend, indemnify and hold harmless Plaintiffs from any liability, etc., for having delivered the cargo. Projector also agreed to keep the Vessel free from arrest and to post security to obtain its release if the Vessel were arrested as a result of delivery of the cargo without the surrender of the bills of lading.

7.      Plaintiffs had for all intents and purposes, an identical or "back-to-back" letter of indemnity with Mitsui OSK.

8.      Three bills of lading dated April 29, 2008 were issued for a total of 78,679 mts of naptha for carriage from Sikka, India to "one or more safe port(s) Korea." The bills of lading were consigned to "The Order of ING Belgium, Brussels, Geneva Branch."

9.      On May 15, 2008, Projector issued discharge instructions ordering Plaintiffs to discharge the cargo without the surrender of the original bills of lading.

10.     On the same date, Projector S.A. issued the LOI to Plaintiffs. *See attached as Exhibit 1.* The LOI is governed by English law.

11.    Plaintiffs passed up Projector's discharging instructions to Mitsui OSK, who passed up the instructions to the owner of the Vessel, who discharged and delivered the cargo as ordered by Projector to 4 Korean receivers.

12.    On or about May 30, 2008, the Vessel was arrested in Singapore on behalf of ING.

13.    In order to secure the release of the Vessel, Plaintiffs provided security in the amount of $69,000,000.00, which represents the principal amount of the claim of $59,006,830.23 plus three years interest at 5.33% per annum and costs.

14.    Despite due demand, to date, Projector has failed to surrender the original bills of lading as required by the charter party and the LOI it had provided Plaintiffs.

15.    In addition, Plaintiffs have suffered damages for the 18 days of delay the Vessel incurred during its arrest as well as legal costs associated with the arrest.

16.    On or about June 9, 2008, Plaintiffs initiated suit against Projector in Singapore. *See Writ of Summons and Statement of Claim, attached herewith as Exhibit 2.*

17.    Despite due demand, Defendant has failed to pay the amounts due to Plaintiffs or to provide the security agreed to under the charter party or the LOI.

18.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in Singapore litigation.  As best as can now be estimated, Plaintiffs expect to recover the following amounts:

|   |   |   |
|---|---|---|
| A. | Security for breached charter party and LOI: | $69,000,000.00 |
| B. | Demurrage for 18 days at $32,000 per day: | $576,000.00 |
| C. | Legal fees claimed by Mitsui OSK from Plaintiffs: $50,000.00 and GBP10, 147 ($18,936.42) | 68,936.42 |

| | | |
|---|---|---|
| D. | Interim amounts claimed by Mitsui OSK against Plaintiffs: | $455,766.50 |
| E. | Plaintiffs' costs and legal fees: | $3,000,000.00 |
| F. | Interest on B, C, D and E only at 5.33% per Annum for 3 years: | $582,825.33 |
| **Total** | | **$73,227,761.75** |

21. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

22. The Plaintiffs seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant, to compel arbitration and to secure the Plaintiffs' claim as described above.

WHEREFORE, Plaintiffs pray:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of $73,227,761.75.

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $73,227,761.75 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court recognize and confirm any foreign judgment or award in Plaintiffs' favor against the Defendant as a judgment of this Court;

D.    That this Court award Plaintiffs the attorneys' fees and costs incurred in this action; and

5

E.    That the Plaintiffs has such other, further and different relief as the Court deems

just, proper and equitable.

Dated: August 21, 2008
       New York, NY

The Plaintiffs,
MITSUI & CO., LTD. and MITSUI OIL (ASIA)
HONG KONG LTD.

By:    _____
       Thomas L. Tisdale (TT 5263)
       Claurisse Campanale Orozco (CC 3581)
       TISDALE LAW OFFICES LLC
       11 West 42nd Street, Suite 900
       New York, NY 10036
       (212) 354-0025 – phone
       (212) 869-0067 – fax
       ttisdale@tisdale-law.com
       corozco@tisdale-law.com

6

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    City of New York
County of New York   )

1. My name is Thomas L. Tisdale.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an Associate in the firm of Tisdale Law Offices, LLC, attorneys for the Plaintiffs.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiffs is that the Plaintiffs is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiffs and agents and/or representatives of the Plaintiffs.

7. I am authorized to make this Verification on behalf of the Plaintiffs.

Dated:    August 21, 2008
          New York, NY


_____
Thomas L. Tisdale

# EXHIBIT 1

Projector Asia Pte Ltd
2 Battery Road
#22-01 Maybank Tower
Singapore 049907

PROJECTOR ASIA PTE LTD

Ph: + (65) 68260118
Fax: + (65) 68260122
Telex: RS20128

Company Registration Number: 200412257M

STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING

15TH MAY 08

To :   MITSUI AND CO., LTD
       The Owners of the  "MORNING EXPRESS"

Dear Sirs

Ship:        MORNING EXPRESS
Voyage:      SIKKA, INDIA / ONE OR MORE SAFE PORT(S) KOREA
Cargo:
NAPHTHA       116457.312 CUBIC METERS AT 15 DEG C
              30788160 U S GALLONS AT 60 DEG F
              733100 U S BARRELS AT 60 DEG F
              78679.000 METRIC TONS

Bill of lading:
B/L NO. : REN-3/2008-2009
DATE : 29 APRIL, 2008
PLACE OF ISSUE : SIKKA, INDIA

The above cargo was shipped on the above ship by RELIANCE INDUSTRIES LIMITED EXPORT ORIENTED UNDERTAKING and consigned to TO THE ORDER OF ING BELGIUM BRUSSELS, GENEVA BRANCH for delivery at the port of ONE OR MORE SAFE PORT(S) KOREA but the bill of lading has not arrived and we, PROJECTOR SA, hereby request you to deliver the said cargo to

1) YOSU, KOREA SAPO PIER TO PART DISCHARGE CARGO 9,600.545 TONNES NAPHTHA TO RECEIVERS LG CHEM., LTD

2) YOSU, KOREA SAPO PIER NO.1 YEOCHUN TANK TERMINAL (Y.T.T.) KOREA TO PART DISCHARGE CARGO 15,500 TONNES NAPHTHA TO RECEIVERS HONAM PETROCHEMICAL CORPORATION.

3) ULSAN, KOREA TO DISCHARGE BALANCE CARGO 14,910.043 TONNES  NAPHTHA TO RECEIVERS SK ENERGY CO., LTD

4) ONSAN, KOREA TO DISCHARGE PART CARGO 38,668.412 TONNES NAPHTHA TO RECEIVERS KOREA PETROCHEMICAL IND. CO., LTD

without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

1. To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of delivering the cargo in accordance with our request.

2. In the event of any proceedings being commenced against you or any of your servants or agents in connection with the delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3. If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference , whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7. This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully
PROJECTOR ASIA PTE LTD
For and on behalf of
PROJECTOR S.A

TAN HREE LENG
ASST OPS MNGR

THIS IS THE EXHIBIT MARKED " TH-4 "
REFERRED TO IN THE AFFIDAVIT
OF ................ TETSUMASA  HAYASHI ........................
SWORN/AFFIRMED THIS ............9th............................ DAY
OF ................ JUNE ........ 20 08 .

BEFORE ME

A COMMISSIONER FOR OATHS

William Oh
Xue Cheng
C200816321
1 Apr 2008 – 31 Mar 2009
COMMISSIONER FOR OATHS
SINGAPORE

# EXHIBIT 2

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Suit No. 397 of 2008/M

Between

**1. MITSUI & CO., LTD**
(Tokyo Stock Exchange Code No. 8031)

**2. MITSUI OIL (ASIA) HONG KONG LTD.**
(Hong Kong Companies Registry No. 245617)

...Plaintiffs

And

**PROJECTOR S.A.**
(Singapore Branch Reg. No. F06265W)

... Defendant

## STATEMENT OF CLAIM

1.    The 1st Plaintiff is a company incorporated in Japan and is a publicly listed company on the Tokyo Stock Exchange.

2.    The 2nd Plaintiff is a company incorporated in Hong Kong and is involved in the crude oil and petroleum products trading business.

3.    By an Agreement dated 1 July 2001 (the "Agreement") between the 1st and 2nd Plaintiffs, the 1st Plaintiff conducts certain types of business activity on behalf of the 2nd Plaintiff. These activities include the purchasing and selling of

commodities, ship chartering and concluding all kinds of documents in connection with their provision of services under the Agreement.

4.    Pursuant to the Agreement:

(i)    The 1st Plaintiff acted as agent to the 2nd Plaintiff which was the principal (whether disclosed or undisclosed) in relation to the services rendered and contracts concluded pursuant to the Agreement.

(ii)    The 1st Plaintiff was obliged to indemnify the 2nd Plaintiff against any and all losses, claims, damages and liabilities arising out of any act or any assumption of any obligation done or undertaken by the 1st Plaintiff on behalf of the 2nd Plaintiff pursuant to the Agreement.

5.    The Defendant is a company with its registered office in Belize.

OVERVIEW

6.    The claim herein arises out of an Letter of Indemnity dated on or about 15 May 2008 (the "Projector LOI" or "LOI") provided by the Defendant to the 1st Plaintiff and/or the 2nd Plaintiff (by reason of the matters stated at paragraphs 24 to 44 below) pursuant to a voyage charter of the vessel "MORNING EXPRESS" (the

"Vessel"). This voyage charter was evidenced by a signed Tanker Voyage Charter Party dated 28 March 2008 (the "Charterparty").

7.    On or about 28 March 2008, the 1st Plaintiff had for and on behalf of the 2nd Plaintiff executed a Tanker Voyage Charter Party dated 28 March 2008 (the "Charterparty") and had sent this to the Plaintiffs' chartering broker, Step Chartering ("Step Chartering") on or about 23 April 2008. Step Chartering had on or about the same day, sent by courier the signed Charterparty to Clarksons, who was the Defendant's chartering broker. It is evident from the chop that appears on the signature page of the Charterparty, that the "MORNING EXPRESS" had been chartered by Mitsui & Co (the 1st Plaintiff) "FOR AND ON BEHALF OF" Mitsui Oil (Asia) Hong Kong Ltd (the 2nd Plaintiff).

8.    The Projector LOI was provided by the Defendant in consideration of its request for the release of the cargo described in bill of lading no. REN-3/2008-2009 (the "Bill of Lading") without requiring production of the originals of the Bill of Lading in exchange.

9.    By the Projector LOI, the Defendant promised, *inter alia*, to prevent any arrest of vessels as a result of compliance with the Defendant's request and if there was an arrest, the Defendant promised to obtain a release of the vessel from arrest, and to deliver or cause all the originals of the Bill of Lading to be delivered up for cancellation. The Plaintiffs claim an interim mandatory injunction and/or a final

injunction and/or damages for breach of the Projector LOI and/or the Charterparty and/or delivery up or surrender of the originals of the Bill of Lading and/or for misrepresentation and/or a declaration of its rights and for an indemnity under the Projector LOI.

## VOYAGE CHARTER BETWEEN THE 2nd PLAINTIFF AND MITSUI O.S.K. LINES LTD.

10.    The 2nd Plaintiff voyage chartered the Vessel for 8 consecutive voyages pursuant to a Tanker Voyage Charter Party dated 11 October 2006 (the "Tanker Voyage Charter Party") with Mitsui O.S.K Lines Ltd ("MOSK"), who were the disponent owners of the Vessel. MOSK is believed to have voyage chartered the Vessel from head owners, Nakata Maritime Corporation ("Nakata").

11.    The Tanker Voyage Charter Party had, *inter alia*, a "Bills of Lading Clause" that states as follows:

*"If original **full set** Bill of Lading not presented by Charterers at discharging port, cargo to be released by Owners against single Letter of Indemnity signed by Charterers. However, the wording of such Letter of Indemnity to be as per Owners' P. and I. Club (without any bank guarantee)."*

The above clause requires the 2nd Plaintiff (described as "Charterers") to indemnify MOSK (described as "Owners") should MOSK be instructed to release

the cargo onboard the Vessel without the production of originals of the Bill of Lading.

## THE SUB-VOYAGE CHARTER

12. On or about 28 March 2008, the 1st Plaintiff on behalf of the 2nd Plaintiff, in-turn, sub-voyage chartered the Vessel through its shipbrokers, Step Chartering, to the Defendant through its shipbrokers, Clarksons London. This sub-voyage charter was evidenced by the Charterparty described at paragraph 6 above. It was agreed *inter alia* that the Vessel would be employed by the Defendant for a voyage commencing 26-27 April 2008 from Sikka – Jamnagar range to South Korea – Japan range.

13. In the Charterparty, the Defendant promised an indemnity in the event that the Defendant requested the delivery of goods without the production of the originals of the Bill of Lading.

14. The aforesaid indemnity was in effect a back to back indemnity to the indemnity which the 2nd Plaintiff provided MOSK.

15. Accordingly, when instructed by the charterer (the Defendant), the Owner would release the cargo onboard the Vessel against the charterer's indemnity.

16.    On or about 15 April 2008, Projector Asia Pte Ltd for and on behalf of the Defendant gave loading instructions through shipbrokers to load about 78,679 MT of Naphtha on board the Vessel (as evidenced by the Bill of Lading dated on or about 26 April 2008) at Sikka, India.

## THE LETTERS OF INDEMNITY

17.    On or about 15 May 2008, Projector Asia Pte Ltd (for and on behalf of the Defendant) issued discharging instructions for the Naphtha at South Korea through shipbrokers.

18.    Projector Asia Pte Ltd, for and on behalf of the Defendant, also issued the Projector LOI dated 15 May 2008.

19.    As stated in the Projector LOI, the Defendant requested the cargo of Naphtha to be delivered to the 4 receivers without production of the originals of the Bill of Lading on account of the originals of the Bill of Lading not having arrived at discharge port as follows:

*"Bill of Lading:*

*B/L NO. : REN-3/2008-2009*

*DATE : 29 APRIL, 2008*

*PLACE OF ISSUE : SIKKA, INDIA*

*The above cargo was shipped on the above ship by RELIANCE INDUSTRIES LIMITED EXPORT ORIENTED UNDERTAKING and consigned to TO THE ORDER OF ING BELGIUM BRUSSELS, GENEVA BRANCH for delivery at the port of ONE OR MORE SAFE PORT(S) KOREA but the bill of lading has not arrived and we, PROJECTOR SA, hereby request you to deliver the said cargo to*

1)  *YOSU, KOREA SAPO PIER TO PART DISCHARGE CARGO 9,600.545 TONNES NAPHTHA TO RECEIVERS LG CHEM., LTD*

2)  *YOSU, KOREA SAPO PIER NO. 1 YEOCHUN TANK TERMINAL (Y.T.T.) KOREA TO PART DISCHARGE CARGO 15,500 TONNES NAPHTHA TO RECEIVERS HONAM PETROCHEMICAL CORPORATION.*

3)  *ULSAN, KOREA TO DISCHARGE BALANCE CARGO 14,910.043 TONNES NAPHTHA TO RECEIVERS SK ENERGY CO., LTD*

4)  *ONSAN, KOREA TO DISCHARGE PART CARGO 38,668.412 TONNES NAPHTHA TO RECEIVERS KOREA PETROCHEMICAL IND. CO., LTD*

*without production of the original bill of lading."*

20.     The following are additional terms of the Projector LOI:

"*In consideration of your complying with our above request, we hereby agree as follows:-*

1.  *To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of delivering the cargo in accordance with our request.*

2.  *In the event of any proceedings being commenced against you or any of your servants or agents in connection with the delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.*

3.  *If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by*

such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7. This indemnity shall be governed by and construed in accordance with English Law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

21.  The Plaintiffs, having received the above indemnities from the Defendant and acting in reliance thereon, in turn furnished the 2nd Plaintiff's indemnity to MOSK on a back-to-back basis on the same day, 15 May 2008. MOSK, in turn furnished its Letter of Indemnity in favour of Nakata, the Owners of the Vessel "MORNING EXPRESS".

22.  By reason of the matters aforesaid, the Plaintiffs are entitled to enforce the terms, in particular, Clauses 1, 2, 3 and 5 of the Projector LOI against the Defendant. By Clause 3 of the Projector LOI, the Defendant expressly promised, *inter alia*, to "prevent" any arrest and if there was an arrest to provide unconditionally and "on demand" such bail or other security as may be required to prevent arrest or to secure the release of the Vessel upon arrest.

23.  Due to the arrest of the vessel "MORNING EXPRESS" on or about 30 May 2008, the Defendant was in breach of its promise to "prevent" any such arrest.

24.  The LOI was not only addressed to the named promisee but was also provided in favour of other joint promisees by reason of Clause 1 of the LOI by which the Defendant promised "To indemnify you, your servants and agents and to hold all of you harmless…" This provision entitled the named promisee as a matter of contract and/or at law to claim the promises made in the LOI for itself as well as for and on behalf of these other promisees.

1ST PLAINTIFF

25.   Clause 3 of the LOI provided simply that if there is an arrest as a result of the Defendant's delivery request, the Defendant is required without further ado, to unconditionally and "on demand" post bail or security to procure the release of the vessel from arrest.

26.   The unconditional nature of Clause 3 is reinforced or fortified by the express reference in the said Clause which requires the Defendant to respond to the arrest as stated in the paragraph above "whether or not such arrest or detention or threatened arrest or detention or such interference may be justified."

27.   Demands were made by the 1st Plaintiff (as stated, *inter alia*, at paragraphs 46 to 74 below) on the Defendant to respond as stated at paragraphs 25 and 26 above but the Defendant failed, neglected and/or refused to do so.

28.   By reason of matters stated below, in particular paragraphs 46 to 74, the Defendant breached its promises as set out in paragraphs 25 and 26 above.

29.   MOSK by its lawyer's letters, *inter alia*, dated 2nd June 2008 demanded the 1st and 2nd Plaintiffs to procure the release of the "MORNING EXPRESS" from arrest.

30.  Pursuant to the Agreement referred to at paragraph 3 above, the 1st Plaintiff is obliged to indemnify the 2nd Plaintiff against any and all losses, claims, damages and liabilities arising out of any transaction undertaken by the 1st Plaintiff on behalf of the 2nd Plaintiff with regard to the voyage charter of the vessel "MORNING EXPRESS" and the Letter of Indemnity.

31.  When it ought not to have to do so by reason of the LOI promised by the Defendant, on or about 18 June 2008 the 1st Plaintiff jointly with the 2nd Plaintiff provided security in the amount of US$69 million in order to procure the release of the "MORNING EXPRESS" from arrest.

32.  The 1st Plaintiff is entitled to enforce the LOI not only for itself but is also contractually and/or at law entitled to enforce for and on behalf of its "servants and agents" in respect of all liabilities incurred or to be incurred pursuant to Clauses 1, 2, 3 and 5 of the LOI. This includes the Plaintiffs' right to claim each for itself and/or on behalf of the other and/or collectively to be jointly indemnified. The true effect of the LOI was and is, *inter alia*, to prevent them from incurring any liability.

33.  Insofar as the 2nd Plaintiff had the right to permit arrangements for and/or facilitated the Defendant's delivery request to the Owners it is the 1st Plaintiff's servant or agent. Accordingly, the 1st Plaintiff is entitled to claim for or on behalf of the 2nd Plaintiff by reason of the matters stated at paragraphs 24 and 32 above.

34.    Further or alternatively, insofar as the 2nd Plaintiff is the principal under the LOI and/or charterparty, the 1st Plaintiff was and is at all material times the servant or agent of the 2nd Plaintiff by reason of the matters stated in the preceding paragraphs herein. Accordingly, the 1st Plaintiff is entitled in its own right to enforce and/or claim under the LOI pursuant to, *inter alia*, Section 2 of the Contracts (Rights of Third Parties) Act (Cap. 53B) and/or by reason of the matters stated in paragraph 24 above.

35.    Further or alternatively, the 1st Plaintiff is also entitled at law to require the Defendant as the indemnifier to respond to the terms promised under the LOI in favour of the 2nd Plaintiff or such other entity as the party to whom the 1st Plaintiff directs or may direct indemnification to be made to by way of the Defendant preventing that party from incurring any liability and to hold that party harmless in all respects.

## 2ND PLAINTIFF

36.    Insofar as the 2nd Plaintiff is the 1st Plaintiff's principal under the charterparty and/or LOI, the 2nd Plaintiff is entitled to enforce and/or claim the promises set out at paragraphs 25 to 28 above.

37.    Paragraph 29 is repeated in that following the arrest of the "MORNING EXPRESS" a demand for provision of security to procure the release of the

"MORNING EXPRESS" from arrest was also made on the 2nd Plaintiff by MOSK.

38.    Despite demands made by the 2nd Plaintiff (as stated, inter alia, at paragraphs 46 to 74 below), the Defendant failed, neglected and/or refused to respond as required.

39.    Paragraph 31 is repeated.

40.    Further or alternatively, the 2nd Plaintiff is accordingly entitled to enforce the LOI not only for itself but is also contractually and/or at law entitled to enforce for and on behalf of its "servants and agents" in respect of all liabilities incurred or to be incurred pursuant to Clauses 1, 2, 3 and 5 of the LOI. This includes the Plaintiffs' right to claim each for itself and/or on behalf of the other and/or collectively to be jointly indemnified. The true effect of the LOI was and is, inter alia, to prevent them from incurring any liability.

41.    The 1st Plaintiff was the 2nd Plaintiff's servant or agent in its dealings concerning the charters and LOI concerning the vessel "MORNING EXPRESS" as stated earlier.

42.    Further or alternatively, insofar as the 1st Plaintiff is construed as the principal under the LOI and/or charterparty, the 2nd Plaintiff is also in its own right entitled

to enforce and/or claim under the LOI pursuant to the reference to "servants and agents" at Clause 1 of the LOI and/or, *inter alia*, Section 2 of the Contracts (Rights of Third Parties) Act (Cap. 53B) and/or for the reasons set out in paragraph 24 above.

43.    Further or alternatively, the 2nd Plaintiff is also entitled at law to require the Defendant as the indemnifier to respond to the terms promised under the LOI in favour of the 1st Plaintiff or such other entity as the party to whom the 2nd Plaintiff directs or may direct indemnification to be made to by way of the Defendant preventing that party from incurring any liability and to hold that party harmless in all respects.

JOINT PROMISEES

44.    In the premises the Plaintiffs are, each by itself and/or on behalf of the other and/or jointly, entitled to enforce the LOI, it being apparent from the language of the LOI, which includes express references to "servants and agents" and "all of you" such that both Plaintiffs as promisees and/or members of a class and/or by description are entitled to enforce the LOI.

DEFENDANT'S BREACHES OF THE PROJECTOR LOI

- ARREST OF THE "MORNING EXPRESS" AT SINGAPORE ON 30 MAY 2008

45.    The Defendant, by reason of the matters stated below, was in breach of clauses 1, 2 and 3 of the Projector LOI in that it failed, neglected and/or refused to (a) prevent an arrest of the Vessel and/or (b) provide on demand such bail or other security as may be required to secure the release of the Vessel from arrest.

46.    On 30 May 2008, the Plaintiffs were notified by an email from MOSK that the Vessel "MORNING EXPRESS" had been arrested at Singapore at 0030 hours (Singapore time) by ING Belgique SA and ING Belgium, Brussels, Geneva Branch ("ING") in Admiralty in Rem No. 78 of 2008.

Particulars

(a)    ING Bank was described in the affidavit supporting the arrest as the holder of the 3 originals of the bill of lading no. REN-3/2008-2009.

(b)    The Vessel's entire cargo had already been discharged and delivered in Korea without presentation of any of the originals of the Bill of Lading.

(c)    Cargill had apparently paid ING the sum of US$14,590,595.33 for 14,910.043 MT of the cargo, leaving ING with a claim for payment in respect of the balance cargo (63,768.957 MT).

(d)    MOSK also informed the Plaintiffs that the current charterparty demurrage rate is US$32,000 per day.

47.    The Plaintiffs wrote the next day (31 May 2008, a Saturday) to the Defendant informing them about the circumstances surrounding the arrest of the "MORNING EXPRESS" as advised by MOSK and enclosed a copy of the arrest papers. The Plaintiffs demanded that the Defendant provide a suitable bond to release the Vessel from arrest or otherwise to secure the release of the Vessel under the terms of the Projector LOI. The Plaintiffs also demanded that the Defendant make a payment of US$100,000 on account of the expenses that will be incurred in defending the action within 7 days of the date of the letter. There was however no reply from the Defendant to this letter.

48.    On 1 June 2008 (Sunday), the 2nd Plaintiff wrote to the Defendant to demand a full explanation within 48 hours for the failure of the Defendant to provide the security to release the "MORNING EXPRESS" from arrest. There was no reply from the Defendant to this letter.

49.     On 2 June 2008 (Monday), the Plaintiffs' lawyers, Drew & Napier LLC, received a letter from Haridass Ho & Partners ("HHP"), who advised that they act for MOSK. HHP advised that pursuant to the charterparty between the Plaintiffs and MOSK, MOSK had similarly extended a Letter of Indemnity in favour of the shipowners, Nakata.

50.     HHP's letter also referred to an enclosed letter dated 2 June 2008 from Holman Fenwick Willian ("HFW"), who had been retained by Nakata.    HFW's letter stated *inter alia* that Nakata was holding MOSK liable for losses and costs incurred as a result of the Vessel "MORNING EXPRESS" being arrested in Singapore for a claim for alleged misdelivery of Naphtha under bill of lading no. REN-3/2008-2009 dated 29 April 2008. HFW demanded that bail or security be provided immediately to release the Vessel from arrest within the day.

51.     HFW in paragraph 4 of their letter put MOSK on notice that the Vessel had been fixed for a charter from the Arabian Gulf with a laycan of 10 June 2008 and that unless the Vessel was released within the day, it was likely that substantial losses and liabilities would be incurred for which MOSK would be held liable. HHP repeated the substance of HFW's demands in their letter to the Plaintiffs and expressly put the Plaintiffs on notice of paragraph 4 of HFW's letter.

52.     Drew & Napier LLC sent on HHP's letter to the Defendant and demanded that the Defendant perform all their obligations under the Projector LOI and to confirm

immediately that they will do the necessary to procure the release of the Vessel. Drew & Napier LLC similarly served notice of paragraph 4 of HFW's letter on the Defendant.

53.    On 3 June 2008 (Tuesday), Drew & Napier LLC received an email from HHP, which attached an email from HFW of the same date. HFW's email stated, *inter alia*, that MOSK's obligation under the Letter of Indemnity to Nakata, was to provide security on demand. HFW advised that as a result of the delays from releasing the Vessel from arrest, it appeared increasingly likely that Nakata would not be able to perform the Vessel's next fixture, for which, MOSK would be held liable. HFW gave a deadline of 1500 hours on the same day (3 June 2008) for MOSK to provide security and release the Vessel, failing which, HFW would recommend to their clients that immediate steps be taken to obtain security from MOSK.

54.    Given that HFW was threatening to arrest MOSK's vessels and/or to injunct MOSK if the deadline in their email of 3 June 2008 was not met, Drew & Napier LLC again wrote to the Defendant demanding that it confirmed that it would perform its obligations under the Projector LOI immediately, failing which, the Plaintiffs would be constrained to take all steps as was necessary, including but not limited to applying for an injunction against the Defendant.

55.    On the same day (3 June 2008), Drew & Napier LLC received another email from HHP, which attached a security demand quantum that originated from Rajah & Tann, who had been retained by ING, the parties who arrested the Vessel. The security demand quantum comprised:

    1.    Principal amount of US$59,006,830.23

    2.    Interest on the above amount at 5.33% per annum for 3 years starting from the date of the Writ

    3.    Costs in the amount of $1 million.

56.    Rajah & Tann had in their email dated 3 June 2008 enclosed their draft letter of undertaking and bank guarantee wording, and Drew & Napier LLC after receiving this security quantum and wording from HHP, immediately sent the information to the Defendant by a letter dated 3 June 2008 referred to above.

57.    On 4 June 2008 (Wednesday), HHP sent Drew & Napier LLC another email attaching HFW's letter of the same date. HFW's letter stated that the Vessel had been under arrest for nearly a week and no action had been taken by MOSK to provide the required security. HFW again threatened to arrest MOSK's vessels that were due to arrive at Singapore the following week (i.e. the week beginning 9 June 2008). HHP's email continued to demand that the Plaintiffs provide security to obtain release of the Vessel from arrest and held the Plaintiffs responsible for all losses.

58.    Drew & Napier LLC immediately on the same day forwarded HHP's email attaching HFW's letter threatening arrest of MOSK's vessels to the Defendant. Drew & Napier LLC also repeated its demand that the Defendant gave a satisfactory and immediate response, failing which, the Plaintiffs would be constrained to take all steps as were necessary, including obtaining an injunction against the Defendant.

59.    Upon Singapore's opening of business on 5 June 2008 (Thursday), Drew & Napier LLC received a fax from Norton Rose LLP, London ("Norton Rose"), who advised that they act for the Defendant. Norton Rose advised that they were only recently instructed and were reviewing the documentation and would be able to provide a substantive response by the next day. Norton Rose mentioned that in the meantime, the Plaintiffs were obliged to comply with their obligations under their Letter of Indemnity with MOSK by taking all steps necessary to mitigate the situation. By this time, the Vessel had been under arrest for almost 7 days.

60.    Drew & Napier LLC immediately replied to Norton Rose on 5 June 2008 by fax with the arrest papers attached. Drew & Napier LLC advised that the "MORNING EXPRESS" had been arrested in Singapore on 30 May 2008 by ING, who claim to be holders of the original bill of lading no. REN-3/2008-2009, as a result of delivery of cargo without production of the original Bill of Lading. Drew & Napier LLC demanded that the Defendant immediately free the Vessel from arrest as by the time Norton Rose responded by the next business day, the

Vessel would have already been under arrest for 7 days, and that unless concrete steps were taken by the Defendant to procure the release of the Vessel by close of business (Singapore time) 6 June 2008 (Friday), the Plaintiffs might be constrained to apply for an injunction against the Defendant.

61.    Very late on 5 June 2008 (Thursday), Drew & Napier LLC received a fax from Norton Rose advising that a "commercial meeting" was to take place at 10.30 a.m. (London time) on 6 June 2008 (Friday) and suggested that no action be taken until the outcome of the meeting was known. The "commercial meeting" between the Defendant and representatives from Mitsui & Co. Europe PLC (Mr. Yasushi Yoshikai, Mr. Kaoru Umehara and Mr. Eiji Yanagawa) in London on 6 June 2008 turned out to be uneventful as the Defendant's representative, Mr. Paul Leone, said that the Defendant was sorting out certain financial arrangements with ING, who was conducting due diligence on the Defendant's stake in a company known as "FR8", which would take about 10 to 15 days.

62.    However, Norton Rose in their fax dated 6 June 2008 to Drew & Napier LLC mentioned that the Plaintiffs and the Defendant had "constructive discussions as to how to deal with the situation regarding ING Geneva". This was not the case as far as the Plaintiffs were concerned. Other than stating that the negotiations with the bank was at an "advanced stage" and that "our clients are doing what they can to remedy this situation as soon as possible", Norton Rose did not say how or when the Defendant was going to secure the release of the Vessel from arrest.

Instead, they asked the Plaintiffs to mitigate by suggesting that the Plaintiffs themselves "tender the necessary security to release the Vessel" under their Letter of Indemnity with MOSK. This was clearly inconsistent with the Defendant's obligations to the Plaintiffs under the Projector LOI and an indication that it was not going to perform its Projector LOI obligations.

63.    On or about 6 June 2008, HFW demanded in its email the sum of US$50,000 for the Owner, Nakata, to defend the claim and advised that losses were estimated to be US$224,000 with losses continuing at US$32,000 per day plus additional losses including losses due to cancellation of a fixture as a result of the arrest. HFW further threatened that unless constructive proposals were received by 4 p.m. the following Monday, 9 June 2008, they would have no hesitation to take steps against MOSK including seeking a mandatory injunction against MOSK in England and a possible arrest of MOSK's vessels.

64.    HFW's message referred to above was conveyed by HHP's email to Drew & Napier LLC on the same day. MOSK warned the Plaintiffs that if a mandatory injunction was sought against MOSK, they would in turn take steps against the Plaintiffs for a similar injunction to compel the Plaintiffs to provide security for the release of the Vessel.

65.    Drew & Napier LLC forwarded HHP's and HFW's emails to the Defendant by fax dated 6 June 2008 and drew the Defendant's attention to the deadline of 4

p.m. (Singapore time) 9 June 2008 imposed by HFW and warned the Defendant that an injunction was being threatened by the shipowners, Nakata as well as MOSK. Drew & Napier LLC once again demanded that unless the Defendant immediately responded positively to all the demands made by the parties up the indemnity and chartering chain, the Plaintiffs would be constrained to apply for an injunction against the Defendant. By clause 3 of the Projector LOI, the Defendant was obliged to provide on demand such bail or security as may be required to prevent the arrest of vessels or to secure the release of such vessels, whether or not such arrest is justified. Further, the Plaintiffs claimed a full indemnity under the Projector LOI.

66.   As a result of the Defendant's tardiness and/or failure and/or refusal and/or neglect to furnish security to secure the release of the Vessel from arrest, on 9 June 2008, the Plaintiffs applied for an injunction from the Singapore High Court to, *inter alia*, compel the Defendant to pay into Court or furnish cash to the Plaintiffs (who would in turn forward the sum of money to MOSK or Nakata to pay into Court) to meet the security demanded by ING in exchange for release of the Vessel; alternatively, to furnish ING with a letter of guarantee from a first class bank in Singapore or an International Group P&I Club Letter of Undertaking for the principal sum plus interest at 5.33% for 3 years and costs of $1 million as demanded by ING.

67.    However, in the event that the Defendant failed to furnish security to lift the arrest resulting in the Plaintiffs themselves providing such security, the Plaintiffs' injunction application prayed that the Defendant be ordered to provide a back-to-back bank guarantee in favour of the Plaintiffs. At the time of filing of this Statement of Claim, a special date *inter partes* hearing on the Plaintiff's interlocutory mandatory injunction application in Summons No. 2486/2008/L was fixed for 1 August 2008 but has been vacated to 18 August 2008.

68.    On 18 June 2008, the Plaintiffs, jointly provided a bank guarantee (to ING) for the sum of US$69 million in order to procure the release of the Vessel from arrest. The Vessel was accordingly released from arrest on 18 June 2008, some 18 days after the Vessel was arrested.

69.    The Plaintiffs have suffered loss and damage by the Defendant's failure to surrender the 3 originals of the bill of lading no. REN-3/2008-2009, to prevent the arrest, and upon arrest to procure a release and to answer to the indemnity demands.

70.    The Plaintiffs, when it ought not to have to do so and as a result of the Defendant's breaches of the Projector LOI, jointly provided security of US$69 million by way of a Mizuho Corporate Bank Guarantee reference no. LOD-405384 dated 13 June 2008 (the "Bank Guarantee"), in order to procure the release of the Vessel from arrest.

71.    By reason, *inter alia*, of the Defendant's breaches of the Projector LOI, which are continuing, the Plaintiffs are constrained to seek the aid of the Honourable Court herein.

72.    By a letter dated 10 June 2008 from the Defendant to its lawyers (which was tendered to Court at the *inter partes* hearing on 11 June 2008), the Defendant admitted that it was liable to furnish security in response to the Plaintiffs' claim, but was just not in a position to do so because it was "in serious financial difficulty".

73.    Even after the Vessel was released from arrest, the Defendant who was apparently unaware of this, wrote to the Plaintiffs through their lawyers in their letter dated 18 June 2008, again admitting to being liable to put up security, but due to their "predicament" was unable to do so. The Defendant is not entitled at law to avoid performing and/or honouring its LOI obligations by asserting its financial difficulty. Further the Defendant is estopped from asserting as aforesaid when by its own admission in its letter of 10 June 2008 tendered to the Court on 11 June 2008 it had stated that it had a material asset in the form of the FR8 Holdings Pte Ltd shares.

74.    By reason of the matters aforesaid in the Statement of Claim and/or admissions, the Defendant is estopped from denying any of its liabilities under the LOI.

CLAUSE 5 OF THE PROJECTOR LOI

75.     Further, by Clause 5 of the Projector LOI, the Defendant was required expressly
and/or impliedly to cause all the originals of the Bill of Lading to be delivered to
the Plaintiffs. By the terms contained and agreed at Clause 5, the Defendant
admitted that it had a "liability" to deliver the originals of the Bill of Lading to the
Plaintiffs and that it was only upon such an event that its liability shall cease.

76.     In breach of the terms of the Projector LOI, the Defendant neglected, failed and/or
refused to produce originals of the Bill of Lading to the Plaintiffs for cancellation.

77.     Further or alternatively, by reason of the promises made at clause 5 of the
Projector LOI and/or the underlying intention and purpose of the Projector LOI,
being a stop-gap instrument, the Defendant:

    (i)     represented that the originals of the Bill of Lading would within a 
            reasonable period of time, which period had long been exceeded, be
            arriving into their possession; and/or

    (ii)    was obliged by reason of (i) above and/or expressly and/or impliedly to
            "cause" all originals of the Bill of Lading to be delivered to the Plaintiffs 
            by procuring the aforesaid originals from ING Bank for surrender or
            cancellation.

78.   The Defendant is in further breach of its LOI obligation to hold the Plaintiffs
harmless in respect of any liability, loss, damage or expense of whatsoever nature
which the Plaintiffs may sustain by reason of delivery of the Cargo in accordance
with the Defendant's request as promised at Clause 1 of the Projector LOI and to
indemnify the Plaintiffs in respect of any loss, damage or expense caused by such
arrest or detention or threatened arrest or detention or such interference, whether
or not such arrest or detention or threatened arrest or detention or such
interference may be justified as promised at Clause 3 of the Projector LOI.

79.   Paragraphs 45 to 74 are repeated.

## MOSK DAMAGES

80.   On or about 7 July 2008 the Plaintiffs received a demand from MOSK for
payment of demurrage and legal costs amounting to US$370,000 and $65,418.50
(with additional costs to follow) for losses arising from the arrest of the
"MORNING EXPRESS". These appear to be interim claims or demands from
MOSK as demurrage was for only part of the period whilst the Vessel was under
arrest. The demands were forwarded to the Defendant through its lawyers on or
about 9 July 2008, but the Defendant in breach of the LOI refused, neglected
and/or failed to pay these demands. The Plaintiffs have on 5 August 2008 further
demanded the sum of GBP 10,174.00, as evidenced by an invoice dated 22 July
2008, from the Defendant in respect of additional legal fees demanded from the

Plaintiffs by MOSK's lawyers. By Clauses 1, 2 and 3 of the LOI, the Defendant had an unconditional obligation to keep the Plaintiffs harmless in respect of any liability, loss, damage or expense of whatsoever nature, and to provide the Plaintiffs with sufficient funds to defend any proceedings commenced against the Plaintiffs or any of their servants or agents.

And the 1st and/or 2nd Plaintiffs claim:-

(i)     An injunction or specific performance that the Defendant does forthwith provide in favour of the 1st and/or 2nd Plaintiffs a bank guarantee from a first class bank in Singapore on wordings to be acceptable to the 1st and/or 2nd Plaintiffs for the sum of US$69 million to cover the 1st and/or 2nd Plaintiffs for the security or guarantee which had been provided by the Plaintiffs as a result of the Defendant's breach of the Projector LOI;

(ii)    An injunction that the Defendant does forthwith deliver all originals of the Bill of Lading to the 1st and/or 2nd Plaintiffs, or otherwise for the Defendant to cause all originals of the Bill of Lading to be delivered to the 1st and/or 2nd Plaintiffs immediately; alternatively,

(iii)   Damages amounting to US$69,000,000;

(iv)a.   US$32,000 per day from the date of arrest of the Vessel till 18 June 2008 based on the Vessel's demurrage rate, and such further damages as may be demanded by Nakata and/or any other entity in respect of all time lost whilst the vessel was under arrest and/or due to the Vessel's failure to perform any fixture or voyage directly or indirectly arising from the arrest of the Vessel;

b.   US$50,000 being the sum demanded by Nakata on 6 June 2008 to defend the claim and such further sum as may be demanded by Nakata and/or MOSK and/or any other entity in respect of the defence of the matter;

c.   The amount of US$370,000, $65,418.50 and GBP10,174.00 being interim amounts claimed by MOSK;

d.   damages to be assessed;

(v)   Further or alternatively, a declaration that the Defendant does indemnify and hold harmless the 1st and/or 2nd Plaintiffs as per the terms of the Projector LOI for any and all sums demanded and/or to be demanded by the 1st and/or 2nd Plaintiffs;

(vi)   A declaration that the Defendant does indemnify and hold harmless the 1st and/or 2nd Plaintiffs in respect of any liability, loss or damage of whatsoever nature whether direct or indirect which may be sustained by the 1st and/or 2nd Plaintiffs

by reason of the delivery of cargo without presentation of the aforesaid originals of the Bill of Lading in accordance with the Defendant's request;

(vii)   A declaration that in the event of any proceedings being commenced against the 1st and/or 2nd Plaintiffs in connection with the delivery of the goods as aforesaid, the Defendant shall provide the 1st and/or 2nd Plaintiffs from time to time with sufficient funds to defend the same;

(viii)   An indemnity as stated in paragraphs (v) to (vii) above;

(ix)   In respect of the originals of the Bill of Lading, that the Defendant provides such sums of money to the 1st and/or 2nd Plaintiffs as may be necessary, *inter alia*, to cancel or obtain the surrender of the Bill of Lading;

(x)   All necessary and consequential orders, accounts and inquiries,

(xi)   Further and/or alternatively, damages to be assessed, for breach by the Defendant of its obligations under and/or pursuant to the Projector LOI and/or the Charterparty,

(xii)   Interest,

(xiii)   Costs and expenses on an indemnity basis, and

(xiv)   Such further or other relief as may be necessary

Dated this 8th day of August, 2008

SOLICITORS FOR THE PLAINTIFFS
DREW & NAPIER LLC

IN THE HIGH COURT OF THE REPUBLIC OF
SINGAPORE

S397/2008/M

Between

1.    MITSUI & CO., LTD
      8031

2.    MITSUI OIL (ASIA) HONG KONG LTD
      (Hong Kong) RC No. 245617

...Plaintiff(s)

And

PROJECTOR S.A.
RC No. F06265W

...Defendant(s)

---

## STATEMENT OF CLAIM

KOH CHING IAN
TSU REN KIN WERNER
LIM MING YI
TEO WEI-KIAT DANIEL
VELLAYAPPAN BALA
DREW & NAPIER LLC
20 RAFFLES PLACE
#17-00 OCEAN TOWERS
SINGAPORE 048620
TEL:65350733
FAX:06565327149
Ref: KCI/WT/LMY/DTWK/VYBM 317039

Filed this 8th day of August 2008

| | |
|---|---|
| Case No. | : S397/2008 M |
| Date of Filing | : 09.06.2008 |
| Time of Filing | : 23:12:55 |
| Doc Control No. | : 1895742 H |

| | |
|---|---|
| Date of 1st PTC Hearing: | 21.07.2008 |
| Time Of Hearing | : 09:00 |
| Attend Before | : Registrar |



Mr. Foo Chee Hock
Acting Registrar
Supreme Court
Singapore

IN THE HIGH COURT OF THE REPUBLIC OF
SINGAPORE

Between

1.    MITSUI & CO., LTD
      8031

2.    MITSUI OIL (ASIA) HONG KONG LTD
      (Hong Kong) RC No. 245617

...Plaintiff(s)

And

PROJECTOR S.A.
RC No. F06265W

...Defendant(s)

---

**WRIT OF SUMMONS**

---

KOH CHING IAN
TSU REN KIN WERNER
LIM MING YI
TEO WEI-KIAT, DANIEL
VELLAYAPPAN BALASUBRAMANIYAM
TEO WEI-KIAT DANIEL
DREW & NAPIER LLC
20 RAFFLES PLACE
#17-00 OCEAN TOWERS
SINGAPORE 048620
TEL:65350733
FAX:06565327149
Ref: KCI/WT/LMY/DTWK/VYBM 317039

Filed this 9th day of June 2008

# WRIT OF SUMMONS

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Suit No.        of 2008/

Between

1. **MITSUI & CO., LTD**
   (Tokyo Stock Exchange Code No. 8031)
2. **MITSUI OIL (ASIA) HONG KONG LTD**
   (Hong Kong Companies Registry No. 245617)

... Plaintiffs

And

**PROJECTOR S.A.**
(Singapore Branch Reg No.F06265W)

... Defendant(s)

To    PROJECTOR S.A., a company incorporated in Belize and having its registered branch office at 2 Battery Road, #22-01 Maybank Tower, Singapore 049907.

THIS WRIT OF SUMMONS has been issued against you by the abovenamed Plaintiffs in respect of the claim endorsed herein. Within eight (8) days after the service of this Writ on you, you must either satisfy the claim or cause an appearance to be entered for you using the electronic filing service and in default of your so doing the Plaintiffs may proceed with the action and judgment may be entered against you without further notice.

Dated this 9th day of June, 2008.

*Chew + Napaer*

..................................
Solicitors for the Plaintiffs

..................................
Registrar,
Supreme Court,
Singapore

This Writ may not be served more than six (6) calendar months after the above date unless renewed by Order of the Court.

The Defendant(s) may enter an appearance(s) either personally or by a solicitor at the Registry of the Supreme Court.

## INDORSEMENT OF CLAIM

1.        The Plaintiffs' claim is for, *inter alia*:

(i)        A declaration that the Defendant does indemnify and hold harmless the Plaintiffs their servants or agents as per the terms of the Letter of Indemnity given to the Plaintiffs by the Defendant dated 15 May 2008 for any sums as may be demanded from the Plaintiffs in relation to the non-production of the original Tanker Bill of Lading No. REN-3/2008-2009 (hereinafter "Bill of Lading");

(ii)        A declaration that the Defendant does indemnify the Plaintiffs their servants and agents and to hold the Plaintiffs their servants and agents harmless in respect of any liability, loss, damage or expense of whatsoever nature which the Plaintiffs their servants or agents may sustain by reason of delivering the cargo in accordance with the Defendant's request;

(iii)        A declaration that the Defendant does indemnify the Plaintiffs their servants and agents and to hold the Plaintiffs their servants and agents harmless in respect of any liability, loss, damage or expense of whatsoever nature which the Plaintiffs their servants and agents may sustain by reason of delivering the cargo without presentation of the aforesaid original Bill of Lading;

- 3 -

(iv)    A declaration that in the event of any proceedings being commenced against the Plaintiffs their servants and agents in connection with the delivery of the cargo as aforesaid, the Defendant shall provide the Plaintiffs on demand with sufficient funds to defend the same;

(v)    A declaration that if, in connection with the delivery of the cargo as aforesaid, should the ship or vessel "MORNING EXPRESS" (LR No. 9208095) of the port of Panama, or any other ship or property in the same or associated ownership, management or control, be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), the Defendant shall provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified;

(vi)    A declaration that as soon as all originals of the Bill of Lading shall have come into the Defendant's possession,  for the Defendant to

- 4 -

deliver the same to the Plaintiffs, or otherwise for the Defendant to cause all originals of the Bill of Lading to be delivered to the Plaintiffs;

(vii)    An order for delivery-up by the Defendant to the Plaintiffs of any and all 3 of the original Bill of Lading;

(viii)    An order for the Defendant to forthwith provide to the Plaintiffs, the principal sum of US$59,006,830.23 plus interest at 5.33% per annum for 3 years starting from 29 May 2008 and costs at S$1,000,000.00 (one million) and such other funds as may be necessary to procure the release of the ship or vessel "MORNING EXPRESS" (LR No. 9208095) of the port of Panama from arrest by the Court here pursuant to the delivery of cargo without presentation of the original Bill of Lading and for which the Defendant is liable to make good and/or secure the claim against the vessel in Admiralty in Rem No. 78 of 2008/K in the High Court of the Republic of Singapore; alternatively, that the Defendant forthwith provides security in a form and for an amount or amounts, and on wordings as may be acceptable by the Plaintiffs in Admiralty in Rem No. 78 of 2008/K or pays to the Plaintiffs the aforesaid sums in order that the said sums may be passed on by the Plaintiffs to Mitsui O.S.K. Lines Ltd and/or the Owners of

- 5 -

the "MORNING EXPRESS" for it to be paid into Court in Singapore in order to procure the release of the vessel from arrest; alternatively

(ix)    An order that in the event that the Defendant fails to comply with paragraph (viii) above, and should the Plaintiffs themselves provide security or a Letter of Guarantee or otherwise procure the release of the vessel, the Defendant shall provide in favour of the Plaintiffs a Bank Guarantee from a first class bank in Singapore on wordings to be acceptable to the Plaintiffs and for the aforesaid sums stated at paragraph (viii) above to abide the result of or to cover the Plaintiffs in respect of any judgment or award that may be made by any court or tribunal in any jurisdiction which may be enforceable against any security that may have been provided by the Plaintiffs in order to lift the arrest of the "MORNING EXPRESS" arrested in Singapore in Admiralty in Rem No. 78 of 2008/K;

(x)    An Indemnity and/or specific performance of each and every of the Defendant's obligations specified under paragraphs (i) to (ix) above;

(xi)    All necessary and consequential orders, accounts and inquiries;

- 6 -

(xii)     Alternatively, damages to be assessed or agreed, for breach by the Defendant of its obligations under and/or pursuant to the Letter of Indemnity dated 15 May 2008;

(xiii)    Interest;

(xiv)    Costs on a solicitor and client basis; and

(xv)     Such further or other reliefs as may be necessary.

This Writ is issued by Drew & Napier LLC of 20 Raffles Place, #17-00 Ocean Towers, Singapore 048620, Solicitors for the 1st Plaintiff whose address is 2-1, Ohtemachi 1-chome, Chiyoda-ku, Tokyo 100-0004, Japan and 2nd Plaintiff whose address is 1001 Admiralty Centre Tower I, 18 Harcourt Road, Hong Kong.

## INDORSEMENT OF SERVICE

This writ was served by                              by way of personal service (state manner of service or in accordance with the terms of an order for substituted service) on the Defendants (who is known to me) (or who was pointed out to me by                              who admitted to me that he was                   at          on the       day of              , 2008.

Endorsed this            day of                  , 2008.

**Process Server.**

REF: KCI/WT/LMY/DTWK/317039